# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| EASTERN MISSOURI LABORERS <br> DISTRICT COUNCIL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SURECUT LAWNCARE, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 4:17-CV-1234 CAS |

## MEMORANDUM AND ORDER

This matter is before the Court on cross motions for summary judgment filed by plaintiffs Eastern Missouri Laborers District Council and its affiliate Laborers International Union of North America, Local 110 (collectively referred to as the "Union"), and defendant Surecut Lawncare, LLC ("Surecut"). These matters are fully briefed and ready for disposition. For the following reasons, defendant's motion for summary judgment will be granted, and plaintiffs' motion for summary judgment will be denied.

### *I. Background*

This is an action brought by the Union under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), against Surecut for the collection of supplemental union dues.

In its Amended Complaint, the Union alleges that former defendant Farinella Bros. Landscaping, Inc. ("Farinella") was a signatory to and bound by a collective bargaining agreement ("CBA"), which required Farinella to make supplemental union dues contributions to the Union on

behalf of its employees.[1] The Amended Complaint further alleges that while Surecut is not a signatory to the CBA, Surecut is bound by the CBA's terms because it is Farinella's alter ego. According to the Amended Complaint, Farinella was sold to Surecut in a ruse transaction on January 29, 2016. More specifically, the Amended Complaint alleges:

> On information and belief, the St. Louis area operations of Surecut and Farinella have or had a common place of business, a common business purpose, common employees, common management (including common control of labor relations), common customers, common equipment, common bids (including many with the names of both companies before the alleged "sale" took place), a common phone number, and a common e-mail address.

Doc. 7 at 2. Therefore, according to the Union, Surecut is the alter ego of Farinella, a signatory to the CBA, and based on the alter ego relationship, Surecut remains bound to the CBA's terms, which it has breached.

For relief, the Union asks that the Court find Surecut is the alter ego of Farinella, and for an order that as the alter ego, Surecut is bound by the CBA. The Union also seeks damages. The Union alleges it does not know how much Surecut owes in supplemental union dues without a financial examination of Surecut's books from 2015 to the present. The Amended Complaint seeks an order of accounting requiring Surecut to submit its books and records to an accountant to determine the amounts owed, and for a judgment based on this accounting. The Union also asks that the Court order "Surecut to make supplemental union dues payments in the future to the Union." Id. at 4.

---

[1] The Union originally brought suit against Surecut and Farinella Bros. Landscaping, Inc. The Union filed an Amended Complaint and dropped Farinella Bros. Landscaping, Inc. as a defendant. The only remaining defendant in this suit is Surecut.

## II. Legal Standard

The Eighth Circuit has articulated the appropriate standard for consideration of motions for summary judgment as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the motion for summary judgment.

## III. Facts

Farinella was incorporated on February 18, 1988 by Frank Farinella, the sole shareholder and director. Mr. Farinella managed the company's day-to-day operations, finances, and employment decisions. Surecut was organized as a limited liability company on April 8, 2005. Since its filing with the Missouri Secretary of State, Robin Earleywine has been the sole owner. Ms. Earleywine also functions as the Office Manager, responsible for adopting all company policies; negotiating contracts; soliciting, interviewing, and hiring new employees; approving purchases of equipment

and supplies; reviewing and signing checks; and performing accounting functions, including accounts receivable, accounts payable, payroll, and general ledger.

Ms. Earleywine's spouse, Kirk Earleywine, is the Operations and Equipment Manager for Surecut, responsible for soliciting new business; negotiating rates, terms, and services with customers; handling customer service needs; assigning customer accounts to supervisors; soliciting, interviewing and hiring new employees jointly with Ms. Earleywine; training new employees regarding customers and company standards; overseeing account assignments and day-to-day operations, including equipment and material; and working with employees by overseeing and supervising work.

Both Farinella and Surecut provide commercial and residential landscaping services. From 2005 to mid-2015, Surecut primarily operated in and around the Lake of the Ozarks area. Farinella primarily operated in the St. Louis area.

In 2015, Mr. Farinella hired St. Louis Group Business Brokers to confidentially advertise the sale of his company and ten acres of property. The public advertisement did not identify the name of the company. Surecut was interested in expanding its operations into the St. Louis area and on August 20, 2015, Kirk Earleywine signed a Confidentiality Agreement for the purpose of learning the identity of the company for sale. After executing the Confidentiality Agreement, the seller was identified as "Farinella Brothers Landscaping, Inc., a Missouri S-Corporation, Frank Farinella individual." Neither Robin Earleywine nor Kirk Earleywine knew of Mr. Farinella or his company prior to making their inquiry with the brokerage firm.

On November 20, 2015, Surecut entered into an Asset Purchase Agreement to acquire all tangible and intangible assets utilized in the operation of Farinella, including 610 Babler Park Drive, Wildwood, Missouri 63005, the real estate upon which Farinella operated, telephone and facsimile

4

numbers, customer lists, e-mail address, trade names, service marks, copyrights, and the good will associated with Mr. Farinella's business. The total purchase price for the transfer of assets was $650,000.00. Throughout the transaction, Farinella and Surecut were represented by their own legal counsel and maintained separate federal tax identification numbers, accounting books, and ownership. The sale was closed on January 29, 2016 and Surecut registered the fictitious name "Farinella Bros. Landscaping" on the same date. Surecut also maintains two other fictitious names, "Surecut Solutions" and "Wildwood Nursery."

In 2015, prior to the sale, Farinella employed approximately eight individuals. The exact number is in dispute, but is immaterial to resolution of the parties' motions. Depending on the season, Surecut employs up to 45 individuals. At the time this case was filed, Surecut had 24 employees. After the sale, Surecut hired six of Farinella's previous employees: Frank Farinella, Dorothy Dunker (Office Manager), and four field workers. Mr. Farinella assumed the job title of "Horticulturist/Landscape Design Manager," under the supervision of both Kirk and Robin Earleywine. In October 2016, Mr. Farinella left Surecut's employment to work for Schaefer-Meyer Seed-Sod Division I, Inc.

## IV. Discussion

Plaintiff Union and defendant Surecut have filed cross motions for summary judgment. The Union argues that Surecut is an alter ego of Farinella. Surecut disagrees. If the Union is correct, then it can pierce Surecut's corporate veil and attempt to collect from it the supplemental union dues contributions under the terms of the CBA. The Union contends that Surecut is the alter ego of Farinella because of the commonality of (1) employees, (2) management and control of labor relations, (3) facilities, (4) customers, (5) business purpose, (6) email address, (7) vehicles and equipment; and (8) bids.

5

The alter ego doctrine developed under the National Labor Relations Act, 29 U.S.C. §§ 151 et seq., focuses "on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement."  Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997) (quoted case omitted); see also Trustees of the Graphic Commc'ns Int'l Union Upper Midwest v. Bjorkedal, 516 F.3d 719, 727 n.2 (8th Cir. 2008) (citing cases).

"In determining whether two business entities are alter egos, . . . courts consider a variety of factors, including whether the two entities have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership."  Midwest Precision Heating and Cooling, Inc. v. N.L.R.B., 408 F.3d 450, 458 (8th Cir. 2005) (cited case omitted).  Courts "also consider whether a motive for the new entity's taking over the operations of the old entity was to evade responsibilities under the Act and whether dealings between the two entities were at arm's length."  Id. at 458-59 (cited case omitted).  This test is flexible, so the lack of any particular factor does not preclude a finding of alter ego status.  Id. at 459 (citing N.L.R.B. v. Campbell-Harris Elec., Inc., 719 F.2d 292, 296 (8th Cir. 1983) (affirming the National Labor Relations Board ("N.L.R.B.") finding that ownership and management of first company, a two-man partnership, was substantially identical to that of second company, a sole proprietorship)).

The uncontroverted facts are that Frank Farinella, the sole shareholder and director of Farinella, sold the business to Surecut on January 29, 2016 via an Asset Purchase Agreement for $650,000.00.  No evidence has been presented to dispute that the Asset Purchase Agreement was not the result of a fair arm's length transaction or that Surecut did not pay the full amount pursuant to the Agreement.  To the contrary, both Farinella and Surecut were represented by separate legal counsel throughout the sale and Surecut paid for the assets as agreed.  See Carpenters Dist. Council

of Kansas City Pension Fund v. JNL Constr. Co., Inc., 596 F.3d 491, 496 (8th Cir. 2010) (alter ego found when second company did not pay for the tools as bargained for with the first company).

Once the arm's length Asset Purchase Agreement was executed, Surecut utilized Farinella's vehicles, equipment, real estate, customer lists, and e-mail address, and hired the majority of the employees that worked for Farinella in 2015. While these factors could weigh in favor of finding an alter ego status, the record reflects that Surecut's corporate purpose for purchasing Farinella was to expand its operations in the St. Louis area. The Court cannot find any persuasive evidence that Farinella's corporate purpose was to sell the business to Surecut, an existing company with separate ownership, to avoid its obligations to the Union. See Greater Kansas City Laborers Pension Fund, 104 F.3d at 1054 ("generally, an alter ego finding requires the existence of an unlawful motive or intent to avoid the terms of the collective bargaining agreement."); Gilroy Sheet Metal, Inc., 280 N.L.R.B. 121, 1986 WL 53939 (1989) (alter ego not found when "the evidence does not establish that hostility toward the Union was a motive for terminating" the business and selling it to another business with separate ownership).

Surecut was an existing business formed in 2005. Before and after Surecut's purchase of Farinella, Robin Earleywine was the sole owner of Surecut and Kirk Earleywine functioned as the Operations and Equipment Manager. Mr. Farinella and the Earleywines were not personally or professionally acquainted until after Surecut signed a Confidentiality Agreement to learn the identity of the business for sale. Although Mr. Farinella was hired by Surecut as a Horticulturist/Landscape Design Manager, he was supervised by Robin and Kirk Earleywine throughout his employment. Mr. Farinella left Surecut in October 2016, approximately nine months after the sale, to work for Schaefer-Meyer Seed-Sod Division I, Inc.

While the parties dispute the degree to which Mr. Farinella assumed a managerial role during his short tenure at Surecut, it is uncontested that Mr. Farinella had no ownership interest in Surecut. The Union has not presented any facts to show that Mr. Farinella had financial control over Surecut, controlled its day-to-day operations, or had the authority to hire or fire employees. Robin Earleywine testified that Mr. Farinella only had limited-lead man duties when Kirk Earleywine was not present on a job site. Jim Heger and Dorothy Dunker, two current Surecut employees who worked for Farinella before the sale, testified that after the sale Mr. Farinella functioned as an employee of Surecut, not an owner, when he took on the primary roles of salesman and foreman.

The only evidence that the Union has presented to support Mr. Farinella's "control" over Surecut was an affidavit from Jose Gomez, a business representative of the Union, who testified that he was told by an unidentified employee at Surecut that Mr. Farinella was overseeing employees and running labor relations. "When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." Jenkins v. Winter, 540 F.3d 742, 748 (8th Cir. 2008) (quoted case omitted).

The Union does not offer any facts to show that the Earleywines' ownership of Surecut is a sham or that Mr. Farinella had some financial control over or ownership interest in Surecut. "[The factor of common ownership is given significant weight in the alter ego analysis" and the NLRB will find an alter ego relationship "in the absence of common ownership where both companies were either wholly owned by members of the same family or nearly totally owned by the same individual or where the older company maintained substantial control over the new company" or where there is a "significant lack of an arms-length relationship." Island Architectural Woodwork Inc., 364 N.L.R.B. 73, 2016 WL 4362368 (2016) (internal citations omitted).

Cadillac Asphalt Paving Co., 349 N.L.R.B. 6, 2007 WL 128298 (2007), is instructive to the instant case. The NLRB held that two employers were neither a single employer nor alter egos. The first company was wholly owned by a Mr. Levy, who had complete operational control over it. The second company was owned 50 percent by Mr. Levy and 50 percent by an entity called MPMC, which had complete operational control over the second company. In reviewing the facts of the case, the NLRB observed that there was "substantially identical" supervision and operations of the companies' Teamsters Units, and that the two companies had "substantially identical" business purposes, equipment, premises, and customers. Id. at 8. Nonetheless, the NLRB refused to find that the companies were alter egos, stating the evidence of substantial commonalities did not "outweigh the . . . evidence showing separate ownership and control and the lack of identical management, as well as the lack of evidence to suggest that [the second company] was formed for other than legitimate reasons." Id. "Simply put, too many of the critical factors traditionally relied upon by the Board to support alter ego findings are absent here." Id. (quoted case omitted).

Based on the foregoing precedent and the facts presented in this case, the Court finds that Surecut is not an alter ego of Farinella because there is no evidence that Farinella or Mr. Farinella maintain any control over Surecut. Id. Further, there is no evidence that ownership and management of Farinella and Surecut are substantially identical. Campbell-Harris Elec., Inc., 719 F.2d at 296. The undisputed facts establish a lack of common ownership or control of the two companies, such that Surecut cannot be considered the alter ego of Farinella.

## *V. Conclusion*

For the foregoing reasons, the defendant's motion for summary judgment will be granted, and plaintiffs' motion for summary judgment will be denied. Defendant's motion for leave to file a surresponse will be denied as moot.

9

Accordingly,

**IT IS HEREBY ORDERED** that defendant Surecut Lawncare, LLC's motion for summary judgment is **GRANTED**. [Doc. 34]

**IT IS FURTHER ORDERED** that plaintiffs Eastern Missouri Laborers District Council and its affiliate Laborers International Union of North America, Local 110's motion for summary judgment is **DENIED**. [Doc. 31]

**IT IS FURTHER ORDERED** that defendant Surecut Lawncare, LLC's motion for leave to file a surresponse is **DENIED as moot**. [Doc. 66]

An appropriate judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  25th  day of June, 2018.